Agreed Upon
Redacted Version

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### BID PROTEST

TECHNATOMY CORPORATION,

*Plaintiff*,

v.

THE UNITED STATES,

*Defendant*.

Case No. ___24-451 C___

Judge _____

████████████████

### BID PROTEST COMPLAINT

Plaintiff Technatomy Corporation ("Technatomy" or "Plaintiff"), by and through undersigned counsel, submits this bid protest Complaint against the United States of America, acting through the U.S. Department of Veterans Affairs ("VA" or the "Agency"), and states as follows:

### SUMMARY OF THE CASE

1.    This Complaint is a post-award bid protest seeking declaratory judgment and permanent injunctive relief against the VA for the VA's arbitrary and capricious decision to not award a contract to Technatomy, a high-performing incumbent contractor,[1] under Request for Proposals No. 36C10B23R0011 ("Solicitation").

2.    The Solicitation sought proposals for a multiple-award indefinite-delivery, indefinite-quantity ("IDIQ") contract to provide solutions and services in support of Information

---

[1] Specifically, ████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████

Technology ("IT").   The procurement is known as the Transformation Twenty-One Total Technology Next Generation 2 ("T4NG2") Program.

3.      The VA's evaluation of Technatomy's proposal and failure to select Technatomy for award of a T4NG2 contract was arbitrary, capricious, an abuse of its discretion, and in violation of law and the terms of the Solicitation.

4.      First, the record reflects the VA arbitrarily and capriciously failed to evaluate Technatomy's proposal in accordance with the Solicitation by ███████████████████ ████████████████████████████████████████████████████ ████████████████████████████████ Alternatively, the Solicitation's term relating to ████████████ is latently ambiguous and Technatomy's reasonable interpretation controls with respect to the term's application.

5.      Second, the record indicates that the VA unreasonably ignored information clearly presented in Technatomy's Proposal, demonstrating that ███████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████

6.      Third, the available record indicates the VA engaged in unequal discussions with one or more offerors to resolve concerns related to ████████████████████ ████████ but did not engage with Technatomy regarding similar concerns.

7.      Fourth, the record reflects that the VA engaged in disparate and unequal treatment when ████████████████████████████████████████ █████████████ but did not do the same for Technatomy.

2

████████████████████████████████████
██████████████████████████████████████████
████████████████████

8.      These errors, individually and together, competitively prejudiced Technatomy and resulted in the arbitrary and capricious award of contracts to offerors that were technically inferior to Technatomy.  Had the VA not arbitrarily and capriciously evaluated Technatomy's proposal, Technatomy would have a substantial chance of award.

9.      Technatomy, accordingly, requests that the Court, *inter alia*: (1) declare the VA's evaluation of Technatomy's proposal under the forgoing criteria was arbitrary and capricious, an abuse of its discretion, and contrary to law; (2) enjoin the VA from performance of the awards; (3) order the VA to either (a) conduct a new evaluation of proposals and reach new award determinations in accordance with the Solicitation and applicable law, or (b) amend the Solicitation to remedy it's latently ambiguous requirements with respect to ████████████ and permit submission of revised proposals; and (4) grant Technatomy such other relief as the Court may deem just and proper including its attorneys' fees and costs.

## PARTIES

10.      Plaintiff Technatomy is a U.S. Small Business Administration ("SBA") certified Service-Disabled Veteran-Owned Small Business ("SDVOSB") and high-performing incumbent contractor on the predecessor contract.  It is a well-respected provider of IT services to the Federal Government and performed exceptionally on the predecessor contract. Technatomy qualifies as a small business under the Solicitation's applicable North American Industry Classification System ("NAICS") Code No. 541512.

11.      Defendant is the United States of America, acting through the VA.

**JURISDICTION &VENUE**

12.     This Court has jurisdiction over this bid protest under the Tucker Act, 28 U.S.C. §

1491(b).

13.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1491(b).

**STANDING**

14.     Technatomy has standing to bring this bid protest as an interested party because it

is an actual offeror that timely submitted its proposal and, but for the Agency's errors, would have

received an award.  *See Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1352 (Fed. Cir.

2004) (finding that an "interested party" is "an actual or prospective bidder or offeror whose direct

economic interest would be affected by the award of the contract or by failure to award the

contract").

15.     The Tucker Act provides that this Court "shall have jurisdiction to render judgment

on an action by an interested party objecting to a solicitation by a Federal agency for bids or

proposals for a proposed contract or to a proposed award or the award of a contract or any alleged

violation of statute or regulation in connection with a procurement or a proposed procurement."

28 U.S.C. § 1491(b).  Technatomy has standing in this matter as "an actual or prospective bidder

or offeror whose direct economic interest would be affected by the award of the contract or by

failure to award the contract."  *Myers Investigative and Sec. Servs., Inc. v. United States*, 275 F.3d

1366, 1370 (Fed. Cir. 2002) (citations omitted).

16.     But for the VA's errors elaborated below, Technatomy would have received an

award and therefore has standing to protest the VA's arbitrary and capricious evaluation of its

proposal and resulting award decisions.

## STATEMENT OF FACTS

### A.    The Solicitation

17.    On March 14, 2023, the VA issued the Solicitation for the T4NG2 procurement. (Solicitation at 14.)[2]  The Solicitation contemplated that the VA would award multiple IDIQ contracts in this competitive procurement for a full range of information technology (IT) services including, but not limited to, technical support, program management, strategy planning, systems/software engineering, enterprise network engineering, cyber security, operations and maintenance, and other services and solutions encompassing the entire range of IT and healthcare IT requirements. (*Id.*)[3]  Specifically, the Solicitation contemplated awarding up to thirty (30) IDIQ contracts, and provided that the VA would reserve up to fifteen (15) contract awards for SDVOSB concerns.  (*Id.* at 159.)  These 30 awards would have a base ordering period of five years with one five-year option period with a $60.7 billion ceiling. (*Id.* at 18, 97, 159.)

---

[2]The VA amended the Solicitation five times.  On April 5, 2023, Amendment 001 was issued to provide the VA's answers to questions received from industry and extend the proposal due date to April 24, 2023. On May 11, 2023, Amendment 002 was issued to provide the VA's answers to additional questions received from industry and to address industry concerns. Only offerors that previously submitted a timely proposal to the April 24, 2023, response date were eligible to respond to Amendment 002. As a result, responses to the amendment were due May 25, 2023. On May 12, 2023, Amendment 003 was issued to fix a clerical error and provide a clarification. On May 23, 2023, a General Announcement was issued extending the revised proposal due date to June 14, 2023. On May 25, 2023, Amendment 004 was issued to correct a clerical error and to: further define the qualifications for reserve awards and the evaluation process; specify that for SDVOSB joint ventures to qualify for reserve awards, the offeror was required to include a narrative for all partners not providing a REP; clarify that point values for REPs from a protégé within a Mentor Protege Joint Venture also apply to VetCert certified SDVOSB joint venture partners within non-Mentor Protege Joint Ventures (identified as "Joint-Venture Scoring"); and revise the T4NG2 Self Scoring Worksheet (Attachment 015) consistent with updated scoring methodology. On June 12, 2023, Amendment 005 was issued to provide minor clarifications to Sections L and M.

[3] Compl. Exhibit 1.

18.     The Solicitation stated that the basis for awards would be determined by the highest rated offerors with a fair and reasonable price and that to be considered one of the highest rated offerors, the proposal must score amongst the 30 highest rated offers received.  (Solicitation at 159.)  In the event of a tie at the 30th position, the Solicitation provided that all offerors tied at the 30th position will receive an award.  (*Id.*)  In the event that more than six offerors are tied for the 30th position, then none of those offerors will receive an award, and instead only 29 contracts will be awarded to the 29 highest rated Offerors.  (*Id.*)

19.     The Solicitation stated the Agency intended to award contracts without discussions, that the VA could conduct clarifications, and that the VA reserved the right to conduct discussions if determined necessary by the VA.  (Solicitation at 159.)

### Proposal Instructions

20.     Offerors were required to utilize the T4NG2 Self Scoring Worksheet, which would calculate both the total score utilizing the Joint Venture Scoring and the Standard Scoring.  (*Id*. at 159.)

21.     Offerors were instructed to submit five (5) proposal volumes: Volume 1 (General); Volume 2 (Relevant Experience); Volume 3 (Past Performance); Volume 4 (Price Files); and Volume 5 (Solicitation, Offer, and Award Documents and Certifications/Representations). (Solicitation at 161-165.)

22.     For Volume 2 (Relevant Experience), offerors were instructed to submit up to ten (10) REPs and attach verification documents by utilizing Attachment 17 (REP Template) so that the VA could validate an offeror's claimed points for each proposal requirement.  (*Id*. at 137, 140-41.)

23.    The Solicitation also provided that offerors would receive "additional points for REPs that demonstrate a positive record (Satisfactory or Above)" under Volume 3 (Past Performance).  (*Id.* at 153.)

24.    The Solicitation also ███████████████████████████████████ ██████████████████████████ Specifically, the Solicitation instructed offerors as follows:





### Evaluation and Award Criteria

25.     The Solicitation provided the VA's evaluation would consist of first sorting the offerors' self-scores from highest score to lowest score, which would result in the establishment of the preliminary top 30 awardees.  (*Id*. at 160.)  Next, the VA would proceed to verify each of the offerors' self-scores through an Acceptability Review in accordance with Sections M.3, Relevant Experience, M.4, Past Performance, and M.5, evaluation for Fair and Reasonable pricing.  (*Id*. at 161.)  The Acceptability Review was to consist of evaluating the Offeror's substantiating documentation to validate or invalidate the claimed points.  (*Id*.)

26.     The Solicitation required the VA to treat minor discrepancies in proposals as clarifications.  (*Id*.)  It also provided that in the event that an evaluation element claimed by an offeror could not be validated by the VA, the offeror's preliminary score would be deducted by the point value of the refuted evaluation element.  (*Id*.)  Based on the VA's verification analysis, offerors were required to be re-sorted based upon the revised preliminary score.  (*Id*. at 160.)

**Offerors' Questions and VA's Answers**

27.     During the procurement's question and answer ("Q&A") period, a total of 918 questions were provided by industry and answered by the VA.  (*See* Consolidated Questions and Answers.)[4]

28.     During the Q&A period, ███████████████████████████████████████
██████████████████████████████████████████

29.     In its Answers, the VA indicated that ███████████████████████████
███████████████████████████████████████████████████████████
█████████████████████████████



The Agency provided the following Answer:



_____

[4] Compl. Exhibit 2.

30.  In other instances, the VA indicated that ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████ For example, ████████

████████ an offeror asked:

███████████████████████████████████████████████

The Agency provided the following Answer:

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

**B.    Technatomy's Proposal**

31.    Technatomy timely submitted its proposal with a self-evaluated score of

████████ (*See generally* Self Scoring Worksheet.) [5]

_____

[5] Compl. Exhibit 3.

32.    With its proposal, Technatomy submitted ███████████████████████████████ ████████████████████████████████████████████████ This included ██ ████████████████████████████████████████████████████████ ████████████████████████████

33.    In compliance with the Solicitation, Technatomy also submitted ████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

34.    Technatomy further ███████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

---

[6] Compl. Exhibit 4.

[7] Compl. Exhibit 5; Compl. Exhibit 6.

[8] Compl. Exhibit 7; Compl. Exhibit 8.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

**C.**      **The VA's Evaluation of Technatomy's Proposal and Debriefing**

35.      On October 31, 2023, the VA notified Technatomy that it did not receive a T4NG2 award because it was not among the 30 companies with the VA's highest evaluated scores.  (Notice of Unsuccessful Offeror at 1-2.)[9]

---

[9] Compl. Exhibit 9.

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

36.    The Agency's notice provided that the evaluated scoring range of the 30 companies[10] that received awards ranged from 15,725.15 to 16,049. (*Id.* at 2; *see also* Amended Source Selection Decision Document ("SSDD") at 13-14.)[11]

---

[10] On October 31, 2023, the VA announced awards to the following companies:

- 1TechJV, LLC
- A2E Digital Solutions, LLC
- Alpha Communications Services LLC
- ATL-NG LLC
- Booz Allen Hamilton, Inc.
- Canopy Health, LLC
- Clear Vantage Point Solutions II, LLC
- Cognosante MVH, LLC
- Credence Management Solutions, LLC
- Deloitte Consulting LLP
- Digipathy, LLC
- Dynamic Government Resources 2, LLC
- ECS Federal, LLC
- Galapagos-IntelliDyne Solutions, LLC
- GovCIO, LLC
- H2 Technology Group, LLC
- JTech LLC
- ManTech Advanced Systems International, Inc
- NxG Solutions, LLC
- Optimal Link LLC
- RP and Partners, LLC
- Science Applications International Corporation
- SCIO JV LLC
- Sierra7, Inc.
- SiloDynamics, LLC
- Starlo Innovation, LLC
- T4 Designs, LLC
- VCH Partners LLC
- Veterans EZ Info, Inc.

37.    The Agency's notice also ████████████████████████████████
████████████████████████████████████████████████████████████ ██

38.    On October 31, 2023 (the same day it received notice that it had not received an award), Technatomy timely requested a debriefing.  Technatomy submitted an amended request for a debriefing on November 2, 2023.

39.    Four and a half months later, the VA conducted Technatomy's debriefing orally (the "Oral Debriefing") on March 11, 2024, and provided Technatomy written debriefing slides (the "Written Debriefing") the same day (collectively, the "Debriefing").

40.    During the Debriefing, the VA explained that ██████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████ █████████████████████████████

41.    During the debriefing, the VA also informed Technatomy, that ████████████
████████████████████████████████████████████████████████████

---

• Zetta Solutions, LLC

On March 7, 2024, the VA announced that the award to Sierra 7, Inc. was cancelled after re-evaluation by the Government in response to a Small Business Administration Area Office size determination that Sierra 7, Inc. is other than a small business for this procurement.  As a result, the VA replaced Sierra 7 with the next highest rated offeror, CGI Federal, Inc. (which is also other than small).

[11] Compl. Exhibit 10.

[12] Compl. Exhibit 11.

[13] Compl. Exhibit 12.

████████████████████████████████████████████
██████████████████████████████████████████████████
█████████████████████

████████████████████████████████████████████████████████

██████

42.    During the Oral Debriefing, Technatomy also inquired as to whether the ████

████████████████████████████████████████████████████████

██████    The VA responded in the Oral Debriefing that ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████

43.    The VA's Written Debriefing also (incorrectly) stated that ████████████

████████████████████████████████    ██████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████

## COUNT I

**The Agency Arbitrarily** ██████████████████████████████████████████████
████████████████████ **Based on a Misapplication of the Solicitation's**
**Requirements** ████████████████████████████

44.    Technatomy incorporates by reference the allegations set forth above and in the foregoing paragraphs as if fully stated herein.

15

████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████

45. In construing the provisions of a solicitation, this Court is guided by well-settled principles of contract interpretation. *CGS-SPP Sec. Joint Venture v. United States*, 158 Fed. Cl. 120, 128 (2022). A contract term is unambiguous when there is only one reasonable interpretation. *C. Sanchez & Son, Inc. v. United States,* 6 F.3d 1539, 1544 (Fed. Cir. 1993). If more than one meaning is reasonably consistent with the contract language, then the contract term is ambiguous. *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 997 (Fed. Cir. 1996). A latent ambiguity is "a hidden or concealed defect which is not apparent on the face of the document, could not be discovered by reasonable and customary care, and is not so patent and glaring as to impose an affirmative duty on plaintiff to seek clarification." *G4S Secure Integration LLC v. United States*, 161 Fed.Cl. 387, 406 (2022) (internal citation omitted). Latent ambiguities are construed against the government as they are not apparent on the face of the solicitation and the government is the drafter of the solicitation. *Id*. at 407 (citing *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1162 (Fed. Cir. 2004) (quotation omitted)).

46. Here, a latent ambiguity exists in the Solicitation's requirements related to the requirements for ███████████████ As a result of this latent ambiguity, the VA arbitrarily and capriciously misevaluated Technatomy's proposal as ████████████████████████ ███████████████████████████████████ The latent ambiguity must be construed against the VA.

47. The Solicitation states in relevant part that:

██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████



48.    The record shows that ███████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████

49.    In responses ██████████████████████████████████████████

██████████████████████████████████████████████    Instead, the VA

focused █████████████████████████████████████████████████████████

███████████████████████████████████████████████████

50.    When ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████

51.    Based on the VA's answers ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████

52.    Rather, Technatomy interpreted the Solicitation as ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████    Moreover,

Technatomy's proposal plainly showed ███████████████████████████

███████████████████████████████

53.    As discussed in Count II, below, ████████████████████████

████████████████████████████████████████

███████████████████████

54.    This interpretation is reasonable, in the context of the Solicitation's stated

requirements and purpose, which is ████████████████████████████

████████████████████████████████████

55.    Because Technatomy's interpretation was reasonable, the doctrine of *contra*

*proferentem* applies and Technatomy's interpretation must control as the VA is the author of the

Solicitation and was in the best position to address and resolve any doubt on this point. *LAI Servs.,*

*Inc. v. Gates*, 573 F.3d 1306, 1317 (Fed. Cir. 2009) (quoting *P.R. Burke Corp. v. United States*,

277 F.3d 1346, 1356 n.3 (Fed. Cir. 2002)).

56.    Accordingly, the VA's ████████████████████████████

violated the terms of the solicitation.

## COUNT II

**The VA Arbitrarily and Capriciously Ignored Information in Technatomy's Proposal that**
**Met Solicitation Requirements and ██████████████████████ ████████████**
**████████████████████**

57.    Technatomy incorporates by reference the allegations set forth above and in the

foregoing paragraphs as if fully stated herein.

58.    In conducting evaluations, agencies act arbitrarily when they overlook or otherwise

ignore information readily available in a proposal. *See, e.g., Allicent Tech., LLC v. United States*,

18

166 Fed. Cl. 77, 123 (2023), *as amended* (July 18, 2023), *reconsideration denied*, No. 22-1380C, 2023 WL 4287196 (Fed. Cl. June 30, 2023) (holding agency arbitrarily and capriciously assessed a weakness for missing information in protester's proposal when the information was, in fact, in the protester's proposal); *see also, e.g.*, *J.R. Conkey & Assocs., Inc.*, B-406024.4, Aug. 22, 2012, 2012 CPD ¶ 241; *Sayres & Assocs., Corp.*, B-408253, B-408253.2, Aug. 1, 2013, 2013 CPD ¶ 206 (sustaining protest where the agency misevaluated clearly presented information in protester's proposal); *PMSI, LLC d/b/a Optum Workers' Comp. Servs. of Fla.*, B-417237.2 et al., Jan. 29, 2020, 2020 CPD ¶ 63 at 4-5; *see also, e.g.*, *Grunley Constr. Co.*, B-407900, Apr. 3, 2013, 2013 CPD ¶ 182 (holding the agency's evaluation is unreasonable where the agency misread the protester's technical approach).   In such cases, the Agency's decisions lack "a rational connection between the facts and the choices made." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43; *see also Beta Analytics Int'l, Inc. v. United States*, 67 Fed. Cl. 384, 402-06 (2005).

59.   Technatomy ███████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████

60.   There was no doub ██████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████

61.   ██████████████████████████████████████████████████
████████████████████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████

62.    As part of its proposal, Technatomy █████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████

63.    As required by the Solicitation, ████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████████████████████████    █████████████████████
████████████████

64.    Technatomy's  proposal  provided  that  ████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████████████████████████████████████████████

20

███████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████

65.     Technatomy's proposal also ███████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████

66.     Similarly, ████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

67.     ██████████████████████████████████████████████

████████████████████████████████████████     ███████████████

████████████████████████

68.     Accordingly, Technatomy's proposal provided ██████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████

69.     However, there is no discussion or even an acknowledgment in the VA's

evaluation. ██████████████████████████████████████████████████

████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████

70.    Accordingly, the VA acted arbitrarily and capriciously when it ████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████

## COUNT III

**The VA Held Improper and Unequal Discussions by Informing Some Offerors of ██ ████████████████████████ but Arbitrarily and Capricious Did Not Conduct Discussions with Technatomy Related to Similar Concerns.**

71.    Technatomy incorporates by reference the allegations set forth above and in the foregoing paragraphs as if fully stated herein.

72.    As set forth in the FAR, discussions are matters within an agency's discretion and "are undertaken with the intent of allowing the offeror to revise its proposal," FAR 15.306(d), with the "primary objective of . . . maximiz[ing] the Government's ability to obtain best value," FAR 15.306(d)(2).  To meet this objective, procuring agencies are "encouraged to discuss . . . aspects of the offeror's proposal that could . . . be altered or explained to enhance materially the proposal's potential for award . . . ." FAR 15.306(d)(3).

22

████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████

73.     An agency's discretion to conduct discussions "does not permit an agency to conduct misleading or unequal discussions." *Raytheon Co. v. United States*, 121 Fed.Cl. 135 (2015). Discussions are unequal when a procuring agency favors "one offeror over another." FAR 15.306(e)(1). Consequently, although contracting officers should tailor discussions to each offeror's proposal, FAR 15.306(d)(1), they should not "*inform some offerors of a concern . . . while staying silent with respect to identical issues in other offerors' proposals*[.]" *Ashbritt, Inc. v. United States*, 87 Fed.Cl. 344, 372 (2009).

74.     During Technatomy's Oral Debriefing, the VA stated that it asked another offer for

████████████████████████████████████████████████████████████████

███████

75.     The record shows the VA did not provide Technatomy with the same opportunity

████████████████████████████████████████████████

76.     It was the VA's duty to ensure that all offerors were competing on a level playing field. *See, e.g.*, *Raytheon Co.*, 121 Fed.Cl. at 165 (internal citations omitted); *see also* FAR 1.102–2(c)(3) (requiring procuring agencies to treat all prospective contractors "fairly and impartially").

77.     The VA engaged in unequal discussions and breached this duty by asking at least one offeror for ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████

78.     Had the VA done so, ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████

## COUNT IV

**The VA Disparately Treated Technatomy when** ███████████████████████████████
█████████████████████████████████████████████████████ **but Did Not Do the**
**Same for Technatomy.**

79.     Technatomy incorporates by reference the allegations set forth above and in the

foregoing paragraphs as if fully stated herein.

80.     "[A] contracting agency must treat all offerors equally, evaluating proposals

evenhandedly against common requirements and evaluation criteria." *Banknote Corp. of Am.*, 56

Fed. Cl. at 383 (citations omitted).  To prevail on a disparate treatment claim, a protestor must

show that the agency treated "substantively indistinguishable" proposals differently. *Office Design*

*Group v. United States*, 951 F.3d 1366, 1372 (Fed. Cir. 2020).

81.     Since awards were made, Technatomy has learned that ███████████████████

█████████████████████████████████████████████████████████████████████████

███████████████████████████ In comparison, Technatomy did not.

82.     The VA cannot lawfully ████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████████

████████████████████████████████████████████████

██████████████████

83.    These facts reflect disparate and unequal treatment.   But for this disparate evaluation and treatment, ████████████████████████████████████████

## PREJUDICE

84.    Technatomy incorporates by reference the allegations set forth above.

85.    Each of these 4 counts independently prejudiced Technatomy in the same manner.

86.    The evaluated scoring range of the 30 companies that received awards was from 15,725.15 to 16,049. (SSDD at 13-14.)

87.    Technatomy was given a final evaluated score of ████████████████████ ██████████████████████████

88.    Had the Agency corrected any of these errors, Technatomy's score ███████████ █████████████████████████

89.    Therefore, if Technatomy prevails on any of these 4 protest grounds, it will receive a contract award under the Solicitation's criteria.

## PRAYER FOR RELIEF

90.    Accordingly, Technatomy, respectfully requests that this Court enter judgment for Plaintiff and further requests that the Court:

A.    Declare that the Agency's award decisions were arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law;

B.    Permanently enjoin performance of the awarded contracts;

███████████████████████████████████████
███████████████████████████████████████████
██████████████████

        C.      Direct the Agency to re-evaluate proposals in accordance with the terms of the Solicitation;

        D.      Award Technatomy its reasonable attorney's fees and costs; and,

        E.      Provide such other and further relief as the Court deems just and proper.

Dated:  March 25, 2024

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

<u>s/ Sean Belanger</u>
Sean Belanger, Attorney of Record
Terry L. Elling, Partner
Amy L. Fuentes, Associate
Holland & Knight LLP
1650 Tysons Boulevard, Suite 1700
Tysons, Virginia 22102
Phone: (703) 720-8040
E-mail: terry.elling@hklaw.com
E-mail: amy.fuentes@hklaw.com
E-mail: sean.belanger@hklaw.com

*Counsel for Technatomy Corporation*