### IN THE UNITED STATES COURT OF FEDERAL CLAIMS
### BID PROTEST

|  |  |  |
|---|---|---|
| **CLEARVIEW TECHNOLOGIES, LLC,** | ) | **REDACTED VERSION** |
| Plaintiff, | ) | |
| v. | ) | **No. 24-451** |
| **UNITED STATES OF AMERICA,** | ) | █████████████ |
| Defendant. | ) | |

**CLEARVIEW TECHNOLOGIES, LLC'S COMBINED REPLY TO GOVERNMENT'S AND INTERVENORS'[1] OPPOSITIONS TO MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD AND OPPOSITION TO CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

---

[1] Clearview additionally opposes the Intervenors' Cross-Motions for Judgment Upon the Administrative Record ("Cross-MJARs") that specifically addressed Clearview's protest grounds (Booz Allen Hamilton, Mantech, Cognosante, GovCIO, SAIC), standing (Cognosante), and any others that challenged the right of Clearview to obtain injunctive relief.

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................... 1

    A.   The AR Confirms VA Conducted Discussions with ▓▓▓ But Not With Clearview
       (Count I)........................................................................................................... 2

       1.   The VA Did Not Address the Issue of Discussions with ▓▓▓ on Remand ................... 3

       2.   The VA Did Not Disregard ▓▓▓▓▓▓▓▓ .................................................. 5

       3.   The VA Did Not Address the Disparate Treatment of Clearview on Remand ............... 8

    B.   The VA Understated the Severity of ▓▓▓▓▓▓▓▓
       ▓▓▓▓▓▓▓▓▓▓▓▓▓ (Count II).......... 9

       1.   The ▓▓▓▓▓▓▓▓ ▓▓▓▓ ..................................9

       2.   ▓▓▓▓▓▓▓▓▓▓▓▓▓
       ▓▓ ...................................................................10

    C.   The VA Improperly and Disparately Relaxed the ▓▓▓▓▓▓▓▓
       ▓▓▓▓▓▓▓▓▓▓ (Count III)........11

    D.   The VA Engaged in Disparate Treatment by Allowing Certain Other Offerors to Revise
       Their Proposals Through Discussions But Did Not Provide the Same Opportunity to
       Clearview (Count IV) ................................................................................. 16

    E.   VA Improperly Evaluated Clearview for ▓▓▓▓▓▓▓▓
       ▓▓▓▓▓▓▓ ount VI) ........................................................................ 19

    F.   Clearview Was Prejudiced by the VA's Errors ............................................. 20

    G.   Permanent Injunctive Relief is Proper ........................................................ 23

II.    STANDING ................................................................................................. 26

III.   CONCLUSION ........................................................................................... 30

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aspire Therapy Servs. & Consultants, Inc. v. United States,*
    166 Fed. Cl. 366 (2023) ...................................................................................................18

*Bannum, Inc. v. U.S.,*
    404 F.3d 1346 (Fed. Cir. 2005)........................................................................................22

*Bridges v. U.S,*
    156 Fed. Cl. 129 (2021), *aff'd,* 54 F.4th 703 (Fed. Cir. 2022) ......................................17

*Centerra Grp., LLC v. U.S.,*
    138 Fed. Cl. 407 (2018) ..............................................................................................5, 22

*CGS-SPP Sec. Joint Venture v. U.S.,*
    158 Fed. Cl. 120 (2022) ...................................................................................................27

*COMINT Sys. Corp. v. U.S.,*
    700 F.3d 1377 (Fed. Cir. 2012)........................................................................................27

*Conley & Assocs., Inc. v. U.S.,*
    142 Fed. Cl. 177 (2019) .....................................................................................................2

*Dell Fed. Sys., L.P. v. U.S.,*
    906 F.3d 982 (Fed. Cir. 2018)..........................................................................................18

*DigiFlight, Inc. v. U.S.,*
    150 Fed. Cl. 650 (2020), *appeal dismissed per stipulation,* 2021 WL
    63337494 (Fed. Cir. Sep. 22, 2021)..................................................................................17

*Excelsior Ambulance Serv., Inc. v. U.S.,*
    124 Fed. Cl. 581 (2015) .....................................................................................................4

*Fed. Acquisition Servs. Team, LLC v. U.S,*
    124 Fed. Cl. 690 (2016) ...................................................................................................24

*Gentex Corp. v. United States,*
    58 Fed. Cl. 634 (2003) .....................................................................................................24

*Great S. Eng'g, Inc. v. United States,*
    128 Fed. Cl. 739 (2016) ...................................................................................................14

*Green Tech. Grp., LLC v. U.S.*,
   147 Fed. Cl. 231 (2020) ................................................................................................24

*Hosp. Klean of Tex., Inc. v. U.S.*,
   65 Fed. Cl. 618 (2005) ..................................................................................................24

*HP Enter. Servs., LLC v. United States*,
   104 Fed. Cl. 230 (2012) ...............................................................................................24

*HPI/GSA 3C, LLC v. Perry*,
   364 F.3d 1327 (Fed. Cir. 2004).....................................................................................27

*Info. Scis. Corp. v. U.S.*,
   80 Fed. Cl. 759 (2008) ..................................................................................................22

*KWV, Inc. v. U.S.*,
   108 Fed. Cl. 448 (2013) ...............................................................................................24

*ManTech Adv. Sys. Int'l, Inc. v. U.S.*,
   141 Fed. Cl. 493 (2019) ...............................................................................................17

*Master Pavement Line Corp.*,
   B-419111, 2020 CPD ¶ 404 (Dec. 16, 2020)...............................................................30

*Mil-Mar Century Corp. v. United States*,
   111 Fed. Cl. 508 (2013) .................................................................................................2

*Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins.
   Co.*,
   463 U.S. 29 (1983)........................................................................................................14

*O'Farrell v. Dep't of Def.*,
   882 F.3d 1080 (Fed. Cir. 2018).....................................................................................17

*Off. Design Grp. v. United States*,
   951 F.3d 1366 (Fed. Cir. 2020).....................................................................................16

*Orca Nw. Real Est. Servs. v. U.S.*,
   65 Fed. Cl. 1 (2005) .......................................................................................................2

*OTI Am., Inc. v. U.S.*,
   68 Fed. Cl. 646 (2005) ............................................................................................24, 25

*Per Aarsleff A/S v. U.S.*,
   829 F.3d 1303 (Fed. Cir. 2016).....................................................................................27

*Serco Inc. v. United States,*
   81 Fed. Cl. 463 (2008) ...........................................................................................24

*Superior Optical Lab'ys, Inc. v. United States,*
   173 Fed. Cl. 243 (2024) ..........................................................................................17

*Sytronics, Inc.,*
   B-297346, 2006 CPD ¶ 15, 2005 WL 3630188 (Comp. Gen. Dec. 28, 2005) .........22

*Technatomy Corp. v. U.S.,*
   173 Fed. Cl. 491 (2024) ..........................................................................................27

*Thalin, LLC v. U.S.,*
   166 Fed. Cl. 246 (2023) ..........................................................................................17

*Thalle/Nicholson Joint Venture v. United States,*
   164 Fed. Cl. 224 (2023) .....................................................................................29, 30

*TLS Joint Venture,*
   B-422275, 2024 CPD ¶ 74 (Apr. 1, 2024) .............................................................30

*Vsolvit, LLC v. United States,*
   166 Fed. Cl. 201 (2023) ..........................................................................................16

*WaveLink, Inc. v. United States,*
   154 Fed. Cl. 245 (2021) ..........................................................................................18

**Other Authorities**

FAR 1.102-2(c)(3) ...................................................................................................15

FAR 4.1103(a)(1)....................................................................................................28

FAR 15.306.............................................................................................................19

FAR 15.306(d)(1) ..................................................................................................1, 8

FAR 52.204-7 ...........................................................................................27, 28, 29, 30

FAR 52.204-7 (a)(1) ...............................................................................................28

FAR 52.204-7 (a)(4) ...............................................................................................28

## I.    INTRODUCTION

The Administrative Record ("AR") revealed that the Department of Veterans Affairs (the "VA" or "Agency") conducted discussions with three different offerors ███████████████████ ██████████████████████████ during the original evaluation.  When that occurred, pursuant to FAR 15.306(d)(1), the VA was required to conduct discussions with other offerors in the competitive range, which included Clearview Technologies, LLC ("Clearview"). The Agency failed to do so and accordingly prejudiced Clearview, which was not afforded an opportunity, through discussions, ████████████████████████████████ ██████████████████████████████

In response, the VA offers three conflicting and non-persuasive arguments: (1) there were no discussions, merely clarifications (VA Cross-MJAR at 21); (2) discussions with ████ are immaterial as the VA conducted a "reexamination" and █████████████████████████ (VA Cross-MJAR at 26); and (3) ███████████████████████████████████████ ███████████████████████████████████ ████████████    VA Cross-MJAR at 22.  None of the Agency's explanations rebut Clearview's protest.

The VA treated Clearview disparately by allowing only ████ to provide a narrative response and additional documents to a clarification request regarding its ████████████ ████████ which the AR shows the VA reviewed and relied upon.  ████████████████ ██████████████████████████████████████ ████████████████████████████████    Additionally, the VA's evaluation of ████████████ is based on erroneous facts and ignores relevant adverse past performance information in the AR.

The VA also erroneously evaluated Clearview's ███████████████████ ██████████████████████████████████████ ██████████████████████████ ████████████ █████████████████████████ █████████

1

███████████████████████████████████████████████ the Agency's treatment of Clearview was disparate and flawed.

These numerous evaluation errors render the contract awards arbitrary and capricious and a violation of law. For these reasons, the Court should deny the Government's and Intervenors' Cross-MJARs and grant Clearview's MJAR.

**A.    The AR Confirms VA Conducted Discussions with ████ But Not With Clearview (Count I)**



███████████████████████████████████████. Through these discussions, ████ was afforded the opportunity to ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ Only ████ was given this opportunity.

The "acid test" of whether an exchange with an offeror is a clarification or a discussion is "[w]hether an agency afforded an offeror the opportunity to revise or modify its proposal." *Orca Nw. Real Est. Servs. v. U.S.*, 65 Fed. Cl. 1, 11 (2005). Where a proposal has been substantively revised or modified, discussions have occurred. *Conley & Assocs., Inc. v. U.S.*, 142 Fed. Cl. 177, 184 (2019). The parties' actions during an exchange—and not the agency's label of the exchange—ultimately determine whether it was a clarification or discussions. *Mil-Mar Century Corp. v. United States*, 111 Fed. Cl. 508, 535 (2013). The communications between ████ and the VA were discussions as they improperly allowed *only* ████ an opportunity to explain its ████

████████████████████████████████

██████████████████████████████

2

Clearview was not afforded the same opportunity to address ███████████████

███████████████ Contrary to the VA's assertions, the AR confirms that the VA's remand

actions ███████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

█████████████████████████

     **1.**     **The VA Did Not Address the Issue of Discussions with** ████ **on Remand**

Effectively, the VA attempts to bifurcate the initial evaluation, which undisputably was

based on improper discussions held with ████ from what it contends was an entirely new

"reevaluation" in which the Agency reached the exact same conclusion about ███████████

███████████████████████████████████

███████████████████████████████████

█████████████████████████

Contrary to the VA's assertion, there is no record of a purported "reevaluation." The AR

contains ███████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ As

detailed in Clearview's MJAR, the AR demonstrated that ███████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████ *See Excelsior*

*Ambulance Serv., Inc. v. U.S.*, 124 Fed. Cl. 581, 593 (2015) ("The lack of any documentation

explaining the method by which the VA re-evaluated the proposals, including any comparative

analysis that it undertook based on the solicitation's requirements, precludes a finding that the VA's

confirmation of the contract award to LMC had a rational basis."). ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████ Thus, the VA's statement that it conducted a "reevaluation" is unsupported by the

record.

Indeed, the CO himself does not state there was a reevaluation and his memo contradicts

the VA's assertions in the Cross-MJAR. Instead, the CO describes ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████ The CO does not state that there was any new evaluation, he simply asserts that █████

████████████████████████ As described in Clearview's MJAR, this statement ██████

████████████████████████████████████████████████████████

████████████████████████████

4

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████.

The only place the CO's memo could be read to suggest there was any new, post-remand

reevaluation of ██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████    ████████████████████████    ██████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████    Moreover, even if the VA

did conduct a new evaluation, it should be entitled to less weight. *See Centerra Grp., LLC v. U.S.*,

138 Fed. Cl. 407, 420 (2018) ("There is a long line of precedent at the GAO which regards post-

protest reevaluations of proposals to be of lesser probative weight, when those reevaluations are

proffered by the agency as evidence that the protestor has not been prejudiced by the agency's

procurement errors. The agency typically argues that its procurement errors did not prejudice the

protestor because a corrective reevaluation of proposals still arrives at the same award result.").

    **2.**    **The VA** ████████████████████████████████████

If the Court accepts the VA's position that the CO conducted a new evaluation, it would

then need to accept the CO's assertion that █████████████████████████████

████████████████████████████    ████████████

5

Additionally undermining the VA's position, the VA relies solely on



### 3. The VA Did Not Address the Disparate Treatment of Clearview on Remand

Even if the VA relied solely on ██████████████████████ ████████████████████████████████████. As explained in Clearview's MJAR, the VA ████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

███████████████████████████. ████████

████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████

Based on the foregoing, the VA's remand actions did not remediate the disparity caused by the discussions held with ████ The Court should sustain the protest on this basis and order the Agency to open discussions with all offerors to level the playing field. FAR 15.306(d)(1)

---

████████████████████████████

████████████████████████████████

████████████

("Discussions are tailored to each offeror's proposal, and must be conducted by the contracting officer with each offeror within the competitive range.").

**B.     The VA Understated the Severity of** ███████████████████████████
███████ **(Count II)**

    **1.     The Named Contractor** █████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████

VA  sole  response  is  █████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████    VA Cross-MJAR at 173.  This litigation position

is contradicted by the CO's erroneous statement that ████████████████████  AR 40003.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

                         █████████

9

██████████████████████████████████████████

████████████████████████

2.     ███████████████████████████████████████
     █████████████████████████

     ███████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████



██████████████████████████████████████████████

██████████████████████████████████████████████

█████

     ████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████
     ██████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

**C.    The VA Improperly and Disparately Relaxed the Past Performance Requirements for ████ by Accepting Lower than Satisfactory Past Performance Ratings (Count III)**

The AR confirms that the Agency improperly awarded a contract to ████ based on a relaxation of the past performance requirement that awardees demonstrate Satisfactory or higher ratings on all past performance examples in order to obtain an additional 200 points per REP (and remove a 100-point deduction for having a less-than-Satisfactory past performance example, resulting in a total 300-point addition).  The VA did not relax this requirement for Clearview; to the contrary, the VA ████████████████████████████████████████████████████████

████████████████████████

Not only did the VA relax the requirement ██████████████████████████████████

████████████████████████████████████  The list of factual inaccuracies is outlined in Clearview's MJAR at 21–23.  The VA does not address the factual errors individually; rather, the VA's response is ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████





████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ Because the evaluation is

based on a false fact with no support in the AR, it is unreasonable, arbitrary, and capricious.

As to the Agency's discretion related to past performance, it is not unfettered. Agencies must still "provide[] a coherent and reasonable explanation of its exercise of discretion," and "must articulate a 'rational connection between the facts found and the choice made.'" *Great S. Eng'g, Inc. v. United States*, 128 Fed. Cl. 739, 742 (2016) (quoting *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

The Court must also find the VA relaxed the requirements if the Court accepts the VA's argument that the CO conducted a "reevaluation" and ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████ The disparate treatment is readily apparent. ████████████████

████████

████████████████████████████████████████████
████████████████████

14



The disparate treatment violates a basic tent of procurements: all offerors must be treated fairly.  FAR 1.102-2(c)(3).

15

████ states that "[t]o prevail on a claim of disparate treatment, a protestor must show that the relevant portions of its proposal were 'substantively indistinguishable' from or 'nearly identical' to those contained in other proposals," and that Clearview has not made such a showing. ████████████████ (citing *Off. Design Grp. v. United States*, 951 F.3d 1366, 1372 (Fed. Cir. 2020); *see Vsolvit, LLC v. United States*, 166 Fed. Cl. 201, 221 (2023)); ████████████ ████████████ As evidenced above, Clearview and ████████████ ████████████████████████████████████ ████████████ But only one entity, ████ was afforded the opportunity to substantively modify its proposal in exchanges with the VA. There was disparate treatment that unfairly prejudiced Clearview.



### D. The VA Engaged in Disparate Treatment by Allowing Certain Other Offerors to Revise Their Proposals Through Discussions But Did Not Provide the Same Opportunity to Clearview (Count IV)

By allowing both ████████████████████████ that were improperly omitted from their respective proposals, and required by the RFP, the VA also improperly conducted discussions, mislabeled as clarifications, with these offerors. Despite the VA's characterization of the communications, the Court should find these to be discussions because the VA allowed ████████ the opportunity to materially revise their proposals by submitting ████ ████████████████████ that they failed to include in their proposals.

In response to this failure to include a material item that had to be provided by the offeror in its proposal, the VA provided what it labeled as a "clarification," allowing each offeror an opportunity to revise its proposal and submit the omitted certification. AR Tab 59b(2) at AR 10806; AR Tab 54b(1) at AR 5132.[3] As a result of ████████ clarification responses, the Agency credited each with the 200 additional points. *See* AR Tab 139(1) at AR 113616; AR Tab 144(1) at AR 114785. By contrast, the VA provided Clearview with no such opportunity to engage

████████████████████████████████████
████████████████

16

in discussions to explain ████████████████████████████████████████

████

There is no dispute that the ██████████ was required for any offeror claiming the 200 points. Instead, the core question is whether the failure to provide the required ████████ was "mandatory" and "material" or a "minor discrepancy" as claimed by the VA. *See* VA Cross-MJAR at 43.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████    Courts have found that when a Solicitation uses the word "must" for a requirement, that requirement is a mandatory requirement. *See Superior Optical Lab'ys, Inc. v. United States,* 173 Fed. Cl. 243, 254 (2024) (solicitation requirement was binding because of its "mandatory terms"); *Bridges v. U.S,* 156 Fed. Cl. 129, 133 n.3 (2021) ("[A]s a rule, courts treat the word 'must' as mandatory."), *aff'd,* 54 F.4th 703 (Fed. Cir. 2022); *O'Farrell v. Dep't of Def.,* 882 F.3d 1080, 1085 (Fed. Cir. 2018) (referring to "must" as a "mandatory term"). Thus, the ████████ was a mandatory requirement.

A solicitation term is material when it is (1) express in the solicitation and (2) serves a substantive purpose. *DigiFlight, Inc. v. U.S.,* 150 Fed. Cl. 650, 657 (2020), *appeal dismissed per stipulation,* 2021 WL 63337494 (Fed. Cir. Sep. 22, 2021). As noted, the requirement was expressed in ████████████████. A term can serve a substantive purpose in one or more ways: when it is "important to the government's evaluation of the offer, is binding on the offeror, or has a more than negligible impact on the price, quantity, or quality of the bid." *Thalin, LLC v. U.S.,* 166 Fed. Cl. 246, 255–56 (2023) (citing *ManTech Adv. Sys. Int'l, Inc. v. U.S.,* 141 Fed. Cl. 493, 506–07 (2019) ("[E]rrors are considered to be material when they (1) violate an express provision

████████████████████████████████████████

███████████████

in the RFP and (2) the provision served a substantive purpose."));  *see Aspire Therapy Servs. & Consultants, Inc. v. United States*, 166 Fed. Cl. 366, 380 (2023) ("other courts have held that if an offeror violates a solicitation provision that serves a substantive purpose, then the violation may constitute a material error rather than a minor or clerical error") (citations omitted).   The Solicitation made clear that ███████████ were among the most important qualities for this award:

████████████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████ As the ███████████ were both mandatory and material, the failure to provide the ███████████ was a material omission that could only be revised through discussions.  "**Clarifications are not permitted to materially revise aspects of a proposal**, such as technical or cost elements, **or to cure material omissions or deficiencies**, which are exchanges properly reserved for discussions."  *Aspire Therapy Servs.*, 166 Fed. Cl. at 380 (citing *Dell Fed. Sys., L.P. v. U.S.*, 906 F.3d 982, 998 (Fed. Cir. 2018) (emphases added)).

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████ First, the RFP did not require the offeror to demonstrate their

---

[4] The VA argues that Clearview misplaces reliance on *WaveLink, Inc. v. United States*, 154 Fed. Cl. 245, 271 (2021) and that *Wavelink* "held that an offeror could clarify its proposal after the proposal submission deadline by providing documentation to support points claimed for an industry certification." VA Cross-MJAR at 25; *see also* BAH Cross-MJAR at 19–20.  VA is incorrect for three reasons.  First, unlike in the T4NG2 Solicitation, in Wavelink "offerors were not required to submit ████████████████████ to claim and ultimately receive points." *Id.*; ████████████ ████████████████████████████  Second, unlike in the T4NG2 Solicitation, the Solicitation in *Wavelink* provided for an "initial screening" step in the evaluation process where "all proposals would be reviewed to ensure that supporting documentation was submitted . . . without the Agency verifying the contents or substance of that document." *Id.*  Finally, due to this "initial screening" process in the evaluation, the Court in *Wavelink* did not reach the question of whether providing a missing certification after proposals were submitted constitutes a clarification or discussion. *Id.*  The Court did however note that "[a]t first glance, this communication would appear to be a discussion," the "failure to provide ████████████████ was not an obvious clerical error," and "although the ████████████ was not a mandatory requirement and, thus, the lack of proposal documentation could not constitute a 'material omission' . . . clarifications are still improper when the information would alter the technical or cost elements of the proposal." *Id.* (citations omitted).

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████ Second, neither of ███████

███████████████████████████████████████████████████████

█████████████████████  █████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████ The VA

cannot convert the failure to comply with a mandatory and material requirement into a "minor discrepancy" merely by labeling it as such.

Third, the Agency's argument that the ██████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████ This argument—██████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████ As described in Clearview's initial MJAR, the VA

cited nothing for this purported assumption in ████████████████████; rather, it was an

unreasonable, disparate, post-hoc attempt to justify these offerors' failure to comply with the

mandatory and material requirement—a requirement that cannot be relaxed for only some offerors.

Having conducted discussions with ██████████, the VA had to conduct discussions with

Clearview per FAR 15.306 and Clearview was prejudiced as a result of the VA's failure to do so.

### E.    VA Improperly Evaluated Clearview for ██████████████████████████████████ (Count VI)

The VA's evaluation of Clearview's ██████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████

19



### F.     Clearview Was Prejudiced by the VA's Errors

The VA argues that none of the protesters demonstrated prejudice, but does not address

Clearview's individual prejudice argument.     VA Cross-MJAR at 245–48.     As alleged in

20

Clearview's SAC and MJAR, Clearview is prejudiced by the VA's conduct of disparate discussions. Clearview MJAR at 34–36; SAC at ¶¶ 168–79. Specifically, Clearview's SAC details how Clearview would have remediated, through discussions, ██████████████████████ ██████████████████████████ Contrary to the VA's assertion that "nothing in the administrative record shows" that protesters "would have submitted a different proposal or additional information to the VA" and that "protesters relied on attorney argument for their bare assertions" (VA Cross-MJAR at 248), ████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████████ In further support, ██████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████

The VA's Cross-MJAR contains a chart demonstrating how Clearview was prejudiced by the disparate discussions. As explained by the VA, the chart on pages 246–47 of its Cross-MJAR "shows the additional points that each protester would need to reach the top 30"—it shows the number of claimed points that the VA invalidated during its evaluation and the number of points short of 30th place. VA Cross-MJAR at 246. For Clearview, ██████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ██████████████████████████ ████████████████████████████████████ ████████████████

21

Clearview did show prejudice as ███████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

The VA then claims protesters failed to show that "challenging awards to higher ranked proposals *necessarily* would result in VA making new awards to them." VA Cross-MJAR at 248 (emphasis added). This is not the standard. Rather, "[t]he Federal Circuit has held that a protester can establish prejudice by showing a 'substantial chance' that it would have received the award, but for the alleged errors." *Info. Scis. Corp. v. U.S.*, 80 Fed. Cl. 759, 770 (2008) (citing *Bannum, Inc. v. U.S.*, 404 F.3d 1346, 1358 (Fed. Cir. 2005)). Moreover, in the context of discussions, the Court has held that, "Where an agency conducts discussions in a manner that favors one vendor over another, we will not speculate about the results had the agency conducted proper discussions and we will resolve any doubts concerning the prejudicial effect of the agency's actions in favor of the protester; a reasonable possibility of prejudice is a sufficient basis for sustaining the protest." *Centerra Grp., LLC*, 138 Fed. Cl. at 421 (quoting *Sytronics, Inc.*, B-297346, 2006 CPD ¶ 15, 2005 WL 3630188, at *7 n.8 (Comp. Gen. Dec. 28, 2005)). Clearview has demonstrated that it has a substantial chance of award if treated fairly and pursuant to the Solicitation.

Further, in an attempt to show that no protester in this procurement could ever get an award, even if successful on the merits, the Government misleadingly cites an excerpt from the declaration of Jeffrey Neill, in which he asserts he will not replace up to 15 contracts that were terminated.

████████████████████████████████████    ███████████████

*See* VA Cross-MJAR at 248; *see also* Mantech Cross-MJAR at 25. However, Executive Director Neill did not state he would not issue new awards at all; to the contrary, he states he would make new awards and increase the total number of awardees: "if the Court were to hold that up to eight of the protesters did not receive a contract award in error, I will make up to eight new awards . . . I have determined that it will be practicable for VA to administer up to 40 total contract awards, that this will allow for adequate competition at the task order level and T4NG awardees will have a fair opportunity and reasonable chance to receive Task Order awards." Neill Decl. ¶ 3. Therefore, Clearview's bid protest remedy does not require the elimination of improperly awarded contracts, not does it necessarily seek to replace itself with those awardees.[5] Thus, the VA's and GovCIO's assertion that Mr. Neill's declaration prohibits a finding of prejudice is simply incorrect.

## G.    Permanent Injunctive Relief is Proper

In addition to the discussion within Clearview's MJAR on the four-part test for injunctive relief, the VA's Cross-MJAR illustrates that the balance of harm tips in Clearview's favor. The VA confirmed that the harm complained of by the VA is merely an inconvenience in contracting vehicle to obtain the sought services, whereas the harm to Clearview is the lost opportunity to fairly compete for and win not only the IDIQ contract, but future task orders issued thereunder, and any profit it would have earned if properly awarded a contract. The only other harm asserted by the VA is attenuated, speculative, and uses the devastating tragedy of veteran suicide rates as a pawn

[5] ███████████████████████████████████████████

for its argument.  The VA provides no evidence demonstrating any correlation, let alone causal link, between the time to implement this contract and an increase in veteran suicide rates.

First, the VA asserts that protesters did not meet the burden to "provide evidence that it was irreparably injured by the Government's actions, either via affidavit or otherwise."  VA Cross-MJAR at 252.  Clearview's irreparable injury is not based solely on the financial losses associated with losing a contract, but rather is based on the lost *opportunity* to earn profit because it was deprived of a fair competitive process due to the VA's procurement errors.  For this reason, the Court should look to the cases cited by Clearview, which make clear that the lost opportunity to fairly compete for a subject contract does constitute irreparable harm.  *See Serco Inc. v. United States*, 81 Fed. Cl. 463, 502 (2008) ("[T]he loss of valuable business on [a] contract . . . deriving from a lost opportunity to compete on a level playing field for a contract, has been found sufficient to prove irreparable harm."); *Green Tech. Grp., LLC v. U.S.*, 147 Fed. Cl. 231, 246 (2020) (same); *see also HP Enter. Servs., LLC v. United States,* 104 Fed. Cl. 230, 245 (2012) ("This court, in many cases, has found that the loss of the opportunity to fairly compete for a contract constitutes irreparable harm."); *OTI Am., Inc. v. U.S.,* 68 Fed. Cl. 646, 659 (2005) (the "loss of potential profits 'stemming from a lost opportunity to compete'" is "sufficient to constitute irreparable harm.") (quoting *Gentex Corp. v. United States*, 58 Fed. Cl. 634, 654 (2003)); *Fed. Acquisition Servs. Team, LLC v. U.S*, 124 Fed. Cl. 690, 708 (2016) ("It is well-established that the profits lost by an offeror because of the government's arbitrary or unlawful rejection of an offer constitute irreparable injury for purposes of injunctive relief."); *KWV, Inc. v. U.S.*, 108 Fed. Cl. 448, 457 (2013) ("A disappointed bidder cannot recover lost profits.") (quoting *Hosp. Klean of Tex., Inc. v. U.S.*, 65 Fed. Cl. 618, 624 (2005)). Other than *Hospital Klean,* the VA notably does not address this precedent.  Clearview does not rely solely on attorney assertions.  Clearview alleged facts that

support a demonstration of prejudice if its bid protest grounds are upheld: it was an actual offeror in response to the subject RFP, the agency deprived it of a fair opportunity to compete for the contract when it permitted other offerors, but not Clearview, the opportunity to revise its proposal, and therefore deprived it of a meaningful chance at contract award and the associated potential profits. Additionally, Clearview alleged that the VA relaxed RFP requirements for some offerors but not Clearview, and the evaluation of ███████████ was unreasonable and flawed. Clearview also presented evidence, ████████████████████████████████████ ████████████████████████████████████████.

For similar reasons, the Court should reject VA's argument that a protester should be required to provide "actual proof of lost profits" to demonstrate irreparable harm. Again, while an incumbent contractor may have evidence of the impact to its business of losing an existing contract, the same is not true when the harm is based on the lost opportunity to bid on a future contract. Beyond the terms of the contract itself, there is no evidence of the profits a contractor could have earned if awarded the contract. If, as the VA asserts, a protester challenging an IDIQ contract award had to provide evidence that it would be awarded future task orders, then no company would ever be able to challenge their exclusion from a multi-award IDIQ because there is no way to prove future contract awards. This is not only illogical, it is also inconsistent with precedent which states that harm is from the lost opportunity to bid on such opportunities and the loss of "potential profits," not guaranteed profits. *OTI Am., Inc.*, 68 Fed. Cl. at 659.

*Second,* the VA's Cross-MJAR proves that the VA will not suffer actual harm, but will only be merely inconvenienced by any subsequent delays caused by injunctive relief. The VA does not assert that it will lose access to essential services, appropriated funds, or suffer any real operational harm. Instead, it concedes it will be able "to procure the services using an alternate contract vehicle ██████████████████████████████████████ ███████████████████

from another Federal agency." VA Cross-MJAR at 255 (citing Neill Decl. at ¶ 6). To the extent that the VA will incur increased fees based on its need to order through different contracting vehicles during the short term needed to give protesters the relief needed to rectify the VA's procurement errors, (*id.* at 256–57), only the VA is at fault.

For all of the reasons set forth in Clearview's SAC, MJAR, and herein, Clearview is entitled to permanent injunctive relief.

## II.    STANDING

Clearview is an interested party that has standing to protest the awards,



Clearview



A latent ambiguity is "a hidden or concealed defect which is not apparent on the face of the document, could not be discovered by reasonable and customary care, and is not so patent and glaring as to impose an affirmative duty on plaintiff to seek clarification." *CGS-SPP Sec. Joint Venture v. U.S.*, 158 Fed. Cl. 120, 130 (2022) (citing *Per Aarsleff A/S v. U.S.*, 829 F.3d 1303, 1312–13 (Fed. Cir. 2016)). Latent ambiguities "are not apparent from the face of the solicitation and may be protested after contracts are awarded." *Technatomy Corp. v. U.S.*, 173 Fed. Cl. 491, 497 (2024) (citing *COMINT Sys. Corp. v. U.S.*, 700 F.3d 1377, 1382 n.5 (Fed. Cir. 2012)). "Ambiguities are read against the solicitation drafter . . . as long as the offeror's interpretation is reasonable." *Id.* (citing *HPI/GSA 3C, LLC v. Perry*, 364 F.3d 1327, 1334 (Fed. Cir. 2004)).



_____

[9] *Id.*





Accordingly, Clearview has standing.

## III.    CONCLUSION

For all the foregoing reasons, Clearview respectfully requests an order granting Clearview all of the relief requested in its SAC, denying the Cross-MJARS filed by the VA and Intervenors, and granting any further relief the Court deems fair and proper.

Dated: November 14, 2025

Respectfully submitted,

/s/ Lawrence Block
Lawrence P. Block (DC Bar No. 452190)
**WINSTON & STRAWN LLP**
1901 L Street N.W.
Washington, D.C. 20036
Ph: 202-282-5037
Fax: 202-282-5100
lblock@winston.com

**Of Counsel:**
Elizabeth Leavy
Michael J. Hill
1901 L Street N.W.
Washington, D.C. 20036
Ph: 202-282-5026
Fax: 202-282-5100
eleavy@winston.com
mjhill@winston.com

*Counsel for Clearview Technologies, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 14, 2025, a true and correct copy of the foregoing was filed with the Court via the Court's electronic filing system and served on all counsel of record via the Court's electronic filing system.

<u>/s/ Lawrence Block</u>
Lawrence Block
